UNITED PRINTING MACHINERY CO. v. CROSS PAPER FEEDER CO.

(Circuit Court of Appeals, First Circuit. November 11, 1915. Rescript, December 31, 1915.)

No. 1116.

1. PATENTS ⬡⟶328—VALIDITY AND INFRINGEMENT—PAPER FEEDING MACHINE.

The Briggs patent, No. 609,954, for a paper feeding machine for feeding separately sheets of paper from a pile to a printing press, was not anticipated and covers a patentable improvement of some breadth; also *held* infringed.

2. PATENTS ⬡⟶129—ASSIGNMENT—ESTOPPEL OF ASSIGNOR—INCONSISTENT POSITIONS.

The assignor of a patent for value, with covenant of warranty, is estopped to deny its validity when sued for infringement by the assignee or to claim a narrower construction of the claims than it did to induce the sale.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⬡⟶129.]

3. PATENTS ⬡⟶202—ASSIGNMENT—ESTOPPEL OF ASSIGNOR—"SUBSTANTIALLY AS DESCRIBED."

The assignor of a patent for value, with covenants of warranty, is estopped, when sued for infringement thereof by the assignee, to deny that the claims cover every structure within the fair meaning of the language of the claims. The words "substantially as described" *held* not to limit the claim to the construction shown in the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. ⬡⟶202.]

4. PATENTS ⬡⟶328—VALIDITY AND INFRINGEMENT—PAPER FEEDING MACHINE.

The White patent, No. 659,907, for a sheet feeder for feeding sheets of paper to a printing press, *held* not infringed by a machine having no "latching device," which is made an element of each claim.

Appeal from the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Suit in equity by the Cross Paper Feeder Company against the United Printing Machinery Company. Decree for complainant, and defendant appeals. Reversed in part, and affirmed in part.

For opinion below, see 220 Fed. 313.

Philip C. Peck, of New York City (J. Sidney Stone, of Boston, Mass., on the brief), for appellant.

Benjamin Phillips, of Boston, Mass. (Alfred H. Hildreth, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and DODGE, Circuit Judges, and MORTON, District Judge.

MORTON, District Judge. This is a suit to enjoin the infringement of two patents, viz., that to T. A. Briggs, dated August 30, 1898, numbered 609,954, for a "paper feeding machine," and that to S. K. White, dated October 16, 1900, numbered 659,907, for a "sheet feeder." In the District Court there was a decree for the complainant on both patents, and the defendant has appealed. We shall use the words "complainant" and "defendant" as meaning the same party as in the lower court.

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Both patents relate to machines for feeding separate sheets of paper from a pile to a printing press or other machine. The result to be accomplished is to push forward successively single sheets from the top of the pile as fast as the receiving machine is ready for them. As to the points now before us, the problem was (1) to advance single sheets only; and (2) to regulate the amount of advance so that each sheet should be left in just the proper position for the receiving machine or forwarding mechanism to take it away. The Briggs patent. is directed to the first point; the White, to the second. There is no necessary interrelation between the two patents.

[1] As to the Briggs patent: It is essential in such machines that the top sheet, in being finally pulled away by the forwarding or receiving machinery, shall not disturb the underlying sheets in the pile So that two sorts of mechanism are involved, viz., that for separating and feeding forward the top sheet, and that for holding the others while the top sheet is drawn off. For doing the first, there had been invented prior to Briggs what is called a "combing roll," or "comb roll." It consists of a wheel having, set around its periphery, small rollers free to revolve on their own axes. When such a combing roll is rotated against the top of a pile of sheets of paper, the small rollers deliver a series of forward blows and pulls, the effect of which is to move ahead the top sheet beyond the second sheet, the second sheet beyond the third, the third beyond the fourth, and so on. This is called "combing out" the pile. While it is going on the pile should be free from restraint or pressure.

When the top sheet has been combed forward the requisite distance, i. e., to the forwarding mechanism, or to the drawing in mechanism of the receiving machine, the combing action must cease, until that sheet has been taken away. At this point, the rear of the combed pile is staggered forward like a shingled roof; i. e., each sheet is a little farther forward than the one immediately below it, so that—the sheets being all of the same length—the rear end of the second sheet is uncovered. To keep the remaining sheets in place while the top one is being pulled away, a "presser foot" is provided in the Briggs patent, and had been used before him, which presses down on the exposed part of the second sheet near its rear edge, and holds the second and all lower sheets against being disturbed by the drag of the moving top sheet, which otherwise would disarrange the pile. After this presser foot has come into action, the combing roll is raised, completely freeing the top sheet, which is then seized and drawn away by the forwarding or receiving mechanism. The presser foot is then raised, the combing roll again comes into operation on the second sheet (which is now the top one), and the cycle is repeated.

This combination of a combing roll and presser foot had been known and used before Briggs' invention, but their interaction had never up to his time been controlled by purely mechanical means. The combination of a feed wheel (instead of a combing wheel) and a presser foot, or its equivalent, controlled by mechanical means, had also been used. But a feed wheel (which has a regular periphery of friction material) operates differently in some respects from a combing

roll; it does not "stagger" or "comb" the pile; and the mechanism used with it differs from that used with a combing roll. A feed wheel cannot be interchanged for a combing wheel in any given combination (nor vice versa) without affecting, and perhaps destroying, the action of the machine. By combining a combing roll, which moved the top sheet slightly forward, thereby uncovering the rear end of the second sheet, and a presser foot acting on this exposed portion of the second sheet, both combing roll and presser foot operating alternately by purely mechanical means against the pile of sheets, Briggs made a patentable improvement of some breadth, which it was one purpose of this patent to protect.

The Briggs patent was at one time owned by the present defendant. While the defendant was the owner, it notified the complainant that a certain machine, which the complainant was then making, infringed the patent. The complainant thereupon bought the Briggs patent for a substantial sum from the defendant. The machine then made by the complainant and claimed by the defendant to be an infringement of the Briggs patent was, as to the parts in question under this patent, substantially similar to the one now made by the defendant which it here contends does not infringe the same patent. The conveyance of the Briggs patent from the defendant to the complainant contained full covenants of warranty, one of which was that the assignor was "the lawful owner of said several letters patent and of the said several inventions described therein." The White patent was also owned by the defendant and was conveyed to the complainant by the same instrument, and with the same covenants, as the Briggs patent as part of the same transaction.

Only one claim of the Briggs patent is in suit, the tenth, which reads as follows:

"10. The combination with the feed table, of a comb wheel, mechanism whereby said wheel is alternately lowered upon the bank of paper and raised therefrom, a presser foot, and mechanism whereby said foot is lowered to hold the bank of paper when the comb wheel is elevated, and raised to release the top sheet when the comb wheel is lowered, substantially as set forth."

[2] That this claim is a valid one the defendant is estopped to deny. And this estoppel extends to every structure within the fair meaning of the language of the claim. Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 58 Fed. 818, 7 C. C. A. 498; Babcock v. Clarkson, 63 Fed. 607, 11 C. C. A. 351; United Shoe Machinery Co. v. Caunt (C. C.) 134 Fed. 239; U. S. Frumentum Co. v. Lauhoff, 216 Fed. 610, 132 C. C. A. 614. The principle defense is noninfringement. It is contended by the defendant—the argument being based on the words "substantially as set forth," which form part of the claim—that the claim is limited to a construction in which the combing wheel and the presser foot alternately carry each other's weight and bear upon the paper "in substantially the same transverse line across the feeder." (Defendant's Brief, p. 27.)

In the Briggs machine, the combing roll and the presser foot are side by side, both being at the extreme rear of the pile; and they rest alternately upon the sheets of paper. The one which is temporarily out of action is supported on the other, like a man standing first on one foot and then on the other. In the defendant's machine, the presser

foot is in the same place as in the patent, but the combing wheel is some distance in front of it; i. e., near the middle instead of the rear end of the sheet. The two are not supported on each other, but each is independently supported, when not in action, by the frame of the machine. They act alternately as in the Briggs machine. It is vital to the correct operation of the Briggs machine that the hold of the presser foot shall be released when the combing wheel is in operation, and that when the combing wheel is out of action and the sheet is to be drawn forward the presser foot shall come into action. The language of the claim is broad enough to cover any mechanism embodying this alternate action of the presser foot and combing roll.

This was the interpretation which the defendant itself originally put upon this claim. During the negotiations which led up to the sale of this patent the defendant contended that:

"Claim 10 covers the alternate raising and lowering of the presser foot and alternate lowering and raising of the comb wheel. This is a broad claim, and the mode of operation and the devices therein specified are essential, as we understand it, to the successful operation of such a feeder."

What the defendant wrote and said to the plaintiff whether its statements be called representations or threats, established its position as to the subject-matter and scope of this patent. It was from the advantage of that position that the defendant sold to the plaintiff. Its statements did not relate simply to matters of law as the defendant erroneously contends; they involved important matters of fact; and they were acted on by the plaintiff. The plaintiff had a right to rely on what the defendant said as to the subject-matter that was being sold; it does not appear that the plaintiff was negligent in doing so. The defendant now repudiates its former position, and says, in effect, that the plaintiff was simple, or timid, or mistaken, to have been influenced by its assertions. But we do not think it open to a vendor to play fast and loose with the vendee in such fashion. Having, as owner of the Briggs patent, stated the bounds of the monopoly thereby conferred, in negotiations which led to the sale of it, the defendant cannot, as against the person to whom its statements were made, and who acted on such statements, be heard to assert a different position.

"Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely." Swayne, J., Casey v. Galli, 94 U. S. 673, 680, 24 L. Ed. 168.

"It is, accordingly, established doctrine that whenever an act is done or statement made by a party, which cannot be contradicted without fraud on his part and injury to others, whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what otherwise would be mere matter of evidence." Davis, J., Dair v. United States, 16 Wall. 1, 4, 21 L. Ed. 491.

See, also, Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Schroeder v. Young, 161 U. S. 334, 344, 16 Sup. Ct. 512, 40 L. Ed. 721.

We are of opinion that the defendant's original position as to the scope of this claim was the correct one, and that, aside from any question of estoppel, the claim ought not to be narrowed to the specific construction shown in the patent, as the defendant now contends. There is no question but what the elements of this claim, so construed, are found in the defendant's device.

It follows that the defendant has infringed the Briggs patent, and that as to this patent the decree of the District Court was right and should be affirmed.

[3] As to the White patent: The successive sheets of paper in a pile do not always move forward, under the action of the combing roll, exactly the same distance. It is necessary, as has been said, that the top sheet should each time be advanced just far enough to be caught properly by the forwarding rolls or the drawing-in mechanism of the receiving machine. Without a device to regulate this distance, some sheets would be moved too far forward, and some not far enough. The necessary regulation is accomplished by a trigger actuated by the forward end of the top sheet, which operates mechanism that throws the combing roll out of action when the desired point is reached by the sheet. This broad idea was old at the time of White's invention.

The claims of the White patent in suit are Nos. 1–4, 6, 9, 21–23. It will only be necessary to quote one of them, as the crucial element, "a latching device for holding said feeding device in action," is in substance common to all.

"1. In a sheet feeder, the combination of a sheet-feeding device, means for throwing said device into action, a latching device for holding said feeding device in action, and mechanical devices for controlling said latching device by the sheet."

The defendant contends that it does not infringe any of the claims in suit because its machine has "no latching device for holding the feeding device in action."

In the White structure, the combing roll is suspended on links, jointed like the elbow joint of a man's arm. Bending the links lifts the combing roll out of contact with the paper. When the links are straightened, the roll rests on the paper, being kept there by its own weight. Normally the links are kept bent by a spring, and the roll (which revolves continually) is off the paper. It is put into action by a cam which momentarily overcomes the spring, thereby allowing the roll to fall upon the paper. The cam goes out of action very quickly, before it is time for the roll to leave the paper. The spring, unless prevented from doing so, would thereupon pull the roll out of action. This is prevented by a "latch" mechanism, which, set by the cam, latches the spring, thereby "holding said feeding device in action" (claim 1) until the front edge of the sheet of paper reaches and trips the trigger. This releases the latch; the spring is freed, and instantly bends the link, which lifts the roll off the paper. The action of the cam may be likened to cocking a gun, which is discharged by the contact of the paper with the trigger. In every one of the claims in suit this latch and holding-in-action mechanism is incorporated as an element.

In the defendant's machine also the combing roll revolves continuously, is held by its own weight in contact with the top sheet when in action, and is put out of action by mechanism controlled by a trigger. Here the resemblance ceases, for the means by which these results are accomplished are essentially different in the two devices. In the complainant's machine, the combing roll moves up and down in the same place. In the defendant's, it has a forward and back movement

not found at all in the other. The trigger of the plaintiff's machine operates through comparatively simple mechanism to release the spring, whereupon the roll flies up. The trigger of the defendant's machine operates through rather complicated mechanism, which need not be described, to arrest at the proper instant, an inclined plane, called a "lifting foot," in the path of the horizontally advancing combing roll. The roll thereupon, owing to its forward movement, slides up the inclined plane off the paper, and goes out of action. Roll and lifting foot then return to their first positions; the trigger resets itself after the sheet has cleared from it; and the cycle is repeated.

The central idea of the White machine is a roll which, normally held out of contact with the paper by a spring, is dropped into contact at the proper time by a cam overcoming the spring, and remains in contact because a latching device restrains the spring until released by trigger mechanism. The central idea of the defendant's machine is a roll supported on a cam which is allowed by the movement of the cam to fall upon the paper and to remain there until, by reason of its forward motion along the paper, it rides out on the lifting foot.

There is in the defendant's machine a pawl in the mechanism between the trigger and the lifting foot which has a tension spring to keep it in engagement with its ratchet. The pawl is controlled by a "latch," so called, connected with the trigger. This ratchet and pawl control the motions of the lifting foot, and through it the time when the combing roll leaves the paper. There is nothing in the complainant's machine at all corresponding with this ratchet, pawl, and lifting foot. They are utterly different in construction and in operation from the heavy spring, and its controlling latch, which latch forms an element of the claims in suit. Moreover, as to the pawl, it is the engagement, not the release of it, which arrests the forward movement of the lifting foot and allows the roll to climb out of action. If the pawl can be regarded as a latch, it is one which throws the comb wheel out of action, not one which, in the language of the claim, "holds it in action." The so-called "latch" of the defendant's machine holds the pawl out of engagement with the ratchet; it has no other control of the combing roll, and does not restrain any force tending to lift it. It has no effect whatever to hold the feeding device in action. The mechanism by which the feeding device is put into action is wholly independent of this "latch."

The claims of the White patent relate to mechanism therein described. The "latching device" referred to in them is the latch therein used to restrain the operation of the spring and prevent the roll from being lifted by the spring until the proper instant. The words in the claim, "holding said feeding device in action," are, standing by themselves, inaccurate. What holds the combing roll against the paper is the force of gravity; and it is plain that this is not what the word "holding" in the claim refers to. The claim is predicated on a construction in which there is a force which constantly tends to lift the combing roll out of action, and is restrained from doing so by a "latching device." The latching device "holds the feeding device in action" only by restraining the action of this force. The latching device of the patent could not possibly be incorporated into the defendant's machine; the result which it accomplishes in the plaintiff's machine is

brought about in the defendant's machine in a radically different manner.

The defendant is estopped, as before stated, to deny that the claims cover what they purport to cover, and what it asserted they covered; and it is not, under the circumstances disclosed, entitled to close limitation and nice discriminations in determining what that purport is. The defendant, however, when owner of the White patent, never claimed, so far as appears, that it was entitled to a construction broad enough to cover the defendant's present machine. The utmost it asserted was that the claims could not be avoided "if a latch is used for *holding down* the comb wheel," etc. The plaintiff's machine did use a latch to restrain a spring, the release of which by trigger mechanism raised the combing roll. In this particular the machine now made by the defendant is quite different, both in construction and mode of operation, from that formerly made by the plaintiff.

The plaintiff's position is, in effect, that the latch element in the claims in suit, which, as therein described, is for "holding said feeding device in action," includes all latch-controlled mechanism for throwing the feeding device out of action; and this was the view taken by the District Court. We are unable to agree that the claims are entitled to so broad a construction.

[4] We are of opinion, therefore, that the defendant's machine does not infringe the White patent, and that as to that patent the decree of the District Court was erroneous, and must be reversed.

The decree of the District Court, so far as it relates to the White patent, is reversed, and the case is remanded to that court for further proceedings not inconsistent with the opinion passed down this day; and the appellant recovers its costs of appeal.

## Rescript.

We have carefully reconsidered the question of costs. Only one bill was filed, and a single decree was entered in the court below, from which this appeal was taken. The issue upon which the appellant has prevailed seems to us of sufficient importance to entitle it to recover costs on the appeal. See Northern Trust Co. v. Snyder, 77 Fed. 818, 23 C. C. A. 480; Johnson v. Foos Mfg. Co., 141 Fed. 73, 90, 72 C. C. A. 105; The Steam Dredge No. 1, 134 Fed. 161, 168, 67 C. C. A. 67, 69 L. R. A. 293; The Horace B. Parker, 76 Fed. 238, 240, 22 C. C. A. 418.

The appellee, who has prevailed on the Briggs patent, moves that the decree of this court be amended by inserting therein an explicit statement that the decree of the District Court as to the Briggs patent is affirmed. We perceive no objection to such an amendment of the decree, with the qualification made necessary by the fact that since the entry of the decree in the court below the Briggs patent has expired.

It is ordered that the decree heretofore entered be rescinded, and that in lieu thereof the following decree be now entered:

The decree of the District Court, so far as it relates to the Briggs patent, is affirmed, except that no injunction is to issue for infringement of said patent; the decree of the District Court, so far as it relates to the White patent, is reversed, and the case is remanded to that court for further proceedings not inconsistent with the opinion passed down on November 11, 1915; and the appellant recovers its costs of appeal.