LEADER PLOW CO. v. BRIDGEWATER PLOW CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   October 6, 1916.)

No. 1447.

1. PATENTS ⟨⟩129—SUIT FOR, INFRINGEMENT—ESTOPPEL OF ASSIGNOR.
   The assignor of a patent is estopped to deny its validity when sued for its infringement, or that it is entitled to a sufficiently broad and liberal construction to give full protection to the invention; but he is not estopped from showing its limitation by evidence of the prior art, or any other relevant fact.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⟨⟩129.]

2. PATENTS ⟨⟩129—SUIT FOR INFRINGEMENT—ESTOPPEL.
   A corporation which commenced business under a license from the owner of certain patents, who was made its general manager, held affected by his estoppel with respect to prior patents which he had assigned to complainant.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⟨⟩129.]

3. PATENTS ⟨⟩328—INFRINGEMENT—HAND PLOW.
   The Hanger patent, No. 764,051, and the Hanger and Thomas patent, No. 792,703, both for improvements in garden hand plows, construed, and held not infringed by the structures of the Click patent, No. 853,961, and the Coffman patent, No. 878,774.

Appeal from the District Court of the United States for the Western District of Virginia, at Charlottesville; Henry Clay McDowell, Judge.

Suit in equity by the Leader Plow Company against the Bridgewater Plow Company and Daniel S. Thomas.   Decree for defendants, and complainant appeals.   Affirmed.

Parker Cook, of Washington, D. C. (Armistead Gordon, of Staunton, Va., on the brief), for appellant.

Melville Church, of Washington, D. C. (D. O. Dechert, of Harrisonburg, Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge.   The Leader Plow Company, as assignee of patents No. 764,051, issued to G. M. Hanger July 5, 1905, and No. 792,703, issued to G. M. Hanger and Daniel S. Thomas June 20, 1905, for improvements in garden hand plows, brought this action for infringement against the Bridgewater Plow Company and Daniel S. Thomas.   The plaintiff rests its case on claim No. 1 of the first patent and claim No. 3 of the second patent, which read as follows:

1. "In a hand plow, the combination, with a down-turned standard having spaced side arms, of a wheel journaled to and between the side arms, spaced handle members pivoted at their lower ends to the side arms of the standard, a brace connecting the handle bars, pivots connecting the upper ends of the bars to the handle bars, said pivots also constituting means for fastening the cross-brace to said handle members, and means for adjustably fastening the lower ends of the supporting bars to the standard to permit the adjustment of the handle members toward and from the same."

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. "In a plow, the combination, with a beam member, of a handle member, one of said members comprising spaced elements, a connection between the members adjustably passing between said elements, and means located at one side of the connection, and separate therefrom, for clamping the elements upon said connection."

The defendant the Bridgewater Plow Company manufactures and sells plows under patents No. 853,961, issued to Joseph S. Click May 21, 1907, and No. 878,774, issued to Charles R. Coffman February 11, 1908, for improvements in hand plows.

One of the defendants, Daniel S. Thomas, was formerly the owner of the two patents now owned by the plaintiff, and was engaged in the manufacture and sale of garden plows thereunder. On January 6, 1906, Thomas sold his plant, his stock, and the two patents to Walter A. Payne and McChesney Goodall for $7,500, and Payne and Goodall sold to the plaintiff, Leader Plow Company. Afterwards Thomas acquired the later Coffman patent and a half interest in the later Click patent. The defendant Bridgewater Plow Company is doing business under a license from Thomas as assignee of these patents, which embraces an option to purchase them for $2,500. Thomas is manager of the defendant corporation.

[1] The garden plow is a comparatively simple implement, long in use, and apparently admitting of little important improvement of construction. The patents set up by the plaintiff being nothing more than improvements on the prior art, the general rule on the subject would require that they be given a narrow construction. Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437. But this general rule is elastic enough to allow the application of the dominant equitable rule that as between the assignor and assignee the construction of the patent must be broad and liberal enough to give full value to the patent assigned, and shut out the assignor from every structure within the fair meaning of the claim. When Thomas assigned the Hanger and Thomas and Hanger patents, he asserted them to be valid, and he is estopped to deny their validity. He was not estopped, however, from showing the limits of the assigned patents by evidence of the prior art, or any other relevant fact. Martin, etc., Co. v. Martin, 67 Fed. 786, 14 C. C. A. 642; Automatic S. Co. v. Monitor S. Co. (C. C.) 180 Fed. 983; Noonan v. Chester Park Co., 99 Fed. 90, 39 C. C. A. 426; Smith v. Ridgely, 103 Fed. 875, 43 C. C. A. 365; Rollman v. Universal H. Works (D. C.) 207 Fed. 97; Plunger E. Co. v. Stokes, 212 Fed. 941, 129 C. C. A. 461. But on an issue of infringement between assignor and assignee the courts will give a liberal rather than a narrow construction to the patent assigned, if necessary to preserve its value.

"While a patentee assignor may, when made a defendant, litigate the scope of his patent and have it judicially construed according to its true extent (Noonan v. Chester, 99 Fed. 91, 39 C. C. A. 426; Smith v. Ridgely, 103 Fed. 875, 43 C. C. A. 365), the courts surely will not, unnecessarily, construe it so narrowly as to make it worthless. See Alvin Co. v. Scharling (C. C.) 100 Fed. 87, by Judge Gray. They will be inclined, so far as the record permits, to make its exclusive right a real and valuable thing. Ordinarily equitable considerations must require this point of view, and the resulting liberality of construction." United States Frumentum Co. v. Lauhoff, 216 Fed. 610, 132 C.

C. A. 614. Schiebel v. Clark, 217 Fed. 760, 133 C. C. A. 490; Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87.

The estoppel extends to every structure within the fair meaning of the claim. United P. M. Co. v. Cross P. F. Co., 227 Fed. 600, 142 C. C. A. 232.

[2] Does this estoppel extend to the Bridgewater Plow Company? If, as an independent corporation, it were confined in its defense to the rights acquired under the license from Thomas, it would be subject to the same estoppel; "for the assignee of a patent takes it subject to the legal consequences of the previous acts of the patentee." McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Worley v. Tobacco Co., 104 U. S. 340, 26 L. Ed. 821. But if the Bridgewater Plow Company was making and selling plows as a corporation independent of Thomas and not in association with him, it would be entitled to the entire prior art without respect to the license under the junior patents. The invalidity of the junior patents would not affect its right in common with the public to the prior art.

We do not think, however, that the defendant company can be said to be disassociated from Thomas. The facts that it entered upon its business under a license from Thomas and that he is its manager tend strongly to support the conclusion that the corporation is doing business in such association and privity with Thomas that it is subject to the same estoppel in favor of the plaintiff. Thus the corporation acting under authority from Thomas and under his general direction as manager may justly be said to aid and abet him in the infringement of the patents assigned by him, if there be infringement. These facts bring the case within the principle laid down in Woodward v. Boston L. M. Co., 60 Fed. 283, 8 C. C. A. 622; Marvel v. Pearl (C. C.) 114 Fed. 946; Continental W. F. Co. v. Pendergast (C. C.) 126 Fed. 381; Mellor v. Carroll (C. C.) 141 Fed. 992; Siemens-Halske E. Co. v. Duncan E. Co., 142 Fed. 157, 73 C. C. A. 375; Mergenthaler v. International T. M. Co. (D. C.) 229 Fed. 168. At least, the facts were sufficient to put upon the defendant corporation the burden of showing that other innocent third parties were interested in the corporation and controlled it.

[3] With these principles in view the first inquiry is as to the differences between the patents acquired by the plaintiff and the prior art. The defendants rely on the Finson patent of 1876 as the nearest approximation to the Hanger patent found in the prior art. Comparison of claim No. 1 of the Hanger patent with the Finson structure shows that the only real differences are: (1) The Hanger patent has a single brace connecting the handle bars; the Finson patent has two braces, but on structures under patents prior to the Finson patent the single brace was used. (2) In the Hanger patent the bolts connecting the upper ends of the supporting bars to the handles are true pivots, and act as such in the lowering or raising of the handle bars; the corresponding bolts in the Finson structure do not pivot but are taken out and replaced in adjusting the handle bars. (3) In the Hanger patent these bolts not only connect the supporting bars, but also fasten the cross bar to the handle bars; in the Finson structure the cross bars

are fastened separately. (4) The Hanger patent has the bolts and holes for adjustably fastening the lower ends of the supporting bars to the standards to permit the adjustment of the handles; in the Finson structure the holes and bolts for adjusting the handles are at the upper ends of the supporting bars.

Claim No. 3 of the Hanger and Thomas patent is not very definite, but the application for the patent was filed after that of Hanger; and construed in the light of the file wrapper it was intended to supplement the Hanger application by doing away with the holes at the lower ends of the standards used for adjusting the handle bars, and substituting clip bolts at the same place. The Finson patent has holes and bolts at the upper ends of the standards.

The language of the plaintiff's claim indicates that these distinctive features which differentiate the plaintiff's patents from the prior art were regarded as substantial and important. The presumption is that the assignor and assignee had in view these substantial differences and that there was no intention to embrace in the sale rights which belonged to the public or to prior patentees. Even as against the assignor the patents must, therefore, be referred to these distinctive features and will not be held to include the prior art. If the defendants' structure contains any of the distinctive features pointed out as peculiar to the Hanger patent or the Hanger and Thomas patent, it infringes; otherwise, it does not.

The plaintiff is not helped by the rule that change in the relative position of the different parts of the machine does not avert infringement where the parts transposed perform the same relative functions after the change as before. True, as between the plaintiff and the defendants the patent must be sustained against the prior art; but this must be done, if it fairly can be, on the features which distinguish it from the prior art, and which both the plaintiff and defendants are presumed to have had in view as substantial improvements. This being so, there is no ground to say that the defendants' return to the prior art is an infringement of plaintiff's patents as a mere change in the relative positions of different parts performing the same functions, or that the plaintiff is entitled to the distinct features of the prior art, used by the defendants, as equivalents of its design.

None of the distinctive features above set out of the Hanger structure, upon which its patentability depended, are found in the defendants' structure. If the plaintiff's structure be an improvement in the art in the particulars set out in the claim, then that of the defendants is a step backward to the prior art in those particulars. Indeed, we are unable to see any material difference in the defendants' structure and that of Finson, except that in the defendants' structure the plows are secured to the forward-curved ends of the perpendicular standards, whereas in both the Finson structure and the Hanger structure the plows are secured to the down-turned ends of the horizontal standards. As this feature of the defendants' structure does not appear in the plaintiff's structure, its use is not an infringement. We are not concerned with the validity of the Coffman or Click patents, except that the fact that they were granted aids the defendants, in that it consti-

tuted a presumption that they did not infringe. Campbell Printing P. Co. v. Duplex Printing P. Co. (C. C.) 86 Fed. 315; Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973.

Giving a liberal construction to the plaintiff's patents as against the prior art, and also against the defendants' structure, and giving full effect to the doctrine of estoppel against the defendants, we do not think that any feature of the defendants' structure is an infringement. Affirmed.