**HADLEY CO., Inc., v. PROVIDENCE STOCK CO.**

No. 586.

District Court, D. Rhode Island.

July 18, 1938.

Frank L. Hinckley and S. E. Wilkins, Jr., both of Providence, R. I., and Robert Cushman, of Boston, Mass., for petitioner.

Nathaniel Frucht, of Providence, R. I., for respondent.

MAHONEY, District Judge.

This is a suit in equity in which the petitioner, the Hadley Company, Inc., a corporation incorporated under the laws of the State of Rhode Island, and located and doing business in the City of Providence, is seeking injunctive relief and damages, and accounting from the respondent, Providence Stock Company, also a Rhode Island corporation, and located and doing business in the City of Providence, for alleged infringement of a patent. The number of the patent is 1,966,063. It was issued on July 10, 1934, and is owned by the petitioner by assignment from the inventor, Charles A. Domler.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions as rulings of law, under Equity Rule 70½, 28 U.S.C.A. following section 723.

The invention has to do with bracelet connecters, and appertains more particularly to an extensible attachment for watch bracelets, and the like.

The application for it was filed February 18, 1931. The invention, which is the subject of the patent, was made in 1930; its production was started in October, 1930; and shipments were begun in January, 1931. During the time the invention appeared on the market and the date of the issuance of the patent, many imitations of it appeared. While the patent was pending in the Patent Office, it was placed in interference with five other claims and judgment of priority was awarded the inventor of the patent in suit. Upon the issuance of the patent, licenses were granted to others who had been making or selling similar articles. The respondent was one of these licensees. In all twenty-four such licenses have been issued. They are still in effect except the one which had been issued to the respondent and which was cancelled on October 1, 1937.

The invention met with favor in the trade and demand for it has been great. The volume of sales have averaged over 250,000 pieces a year, with a money value of over $500,000 a year. Royalties from

916

these licenses have averaged about $20,000 annually.

The respondent, operating under said license, made an extensible clasp until some time in 1935, and paid royalties on it to the amount of about $2,000. About that time, it made a different clasp and placed it on the market but found that it was not commercially acceptable. It ceased making this clasp and there is no claim that this article is an infringement of the patent in the present case.

After it had been demonstrated that this article, which had a manually operated lug on its side, was not attractive to the trade and its manufacture by the respondent had ceased, the respondent designed another form of clasp which was more acceptable to the trade, and has continued to place it on the market since 1935. This is the article which the petitioner maintains infringes its patent.

In 1936, the petitioner brought its action against the respondent in the state court to recover royalties under the license agreement with respondent. That action is still pending.

On October 1, 1937, the termination of the license agreement, after written notice, was assented to by the respondent.

It is maintained by the petitioner that the respondent has continued to manufacture and sell since October 1, 1937, without license, extensible and collapsible clasps for wrist watches, which infringe upon certain claims of the patent in suit.

The invention provides for an extensible and collapsible clasp for wrist watch bracelets made up of a combination of sliding and folding links. These can be extended or enlarged without disconnecting the bracelet ends. The bracelet can pass freely over the hand of the person using it, and, shortened and closed about the wrist, and while in a closed position on the wrist, be adjusted accurately and snugly to fit wrists of different sizes.

The use of folding links for the extending and contracting of bracelets has been long known in the art. This has been true of sliding links. It is also true of folding links and sliding links in the same clasp.

Prior to the invention in the present case, there was no clasp with a locking device, ratchet and pawl, to control the adjustment of the sliding links automatically rendered operative when the folding link or links were closed upon the sliding links, and inoperative when the folding link or links were in open position, which permitted the final adjustment of the sliding links when the folding links were in closed position.

The invention reveals that the locking device, ratchet and pawl, are in operative engagement when the folding link or links are closed. When the clasp is in its closed position the sliding links may be adjusted within relatively small limits, preferably only in the direction to shorten the bracelet and not in the direction to lengthen the bracelet.

When the folding link or links are unfolded to an open position, the ratchet and pawl are automatically released from operative engagement so that the sliding links may be opened to their full extent. The closing and opening of the folding link or links control the operative engagement and disengagement of the ratchet and pawl.

An examination of the structure of the invention shows two sliding links which slide endwise, one upon the other. There are two folding links hinged to the end of one sliding link. A pawl is on the other sliding link and a series of ratchet teeth is on one of the folding links. The ratchet and pawl are in operative engagement when the folding links are folded into a closed position upon the sliding links. When the folding links are in a closed position, the sliding links may be adjusted in a direction to shorten the clasp by pushing the sliding link inward. As the pawl engages the ratchet teeth, it is not possible to adjust the clasp in a direction to lengthen it. Upon moving the folding links into open position, the pawl is released from the ratchet. Thereupon, all the links, both sliding and folding links, may be opened to their full extent.

Claims 1, 2, 5 and 6 are the claims in issue. They are as follows:

"1. An extensible connecter for bracelets comprising two sliding members connected to slide endwise one upon the other, a folding member, means connecting the folding member to one of the sliding members, said folding member constituting a connecting link between the sliding members and one end of the bracelet, and means inoperative when the folding member is in open position but operative when

the folding member is folded over in closed position upon the sliding members to prevent lengthwise adjustment of the two sliding members in a direction to extend the same but to permit lengthwise adjustment of the two sliding members in a direction to contract the same while the folding member is in closed position.

"2. An extensible connecter for bracelets comprising two sliding members connected to slide endwise one upon the other, a folding member, means connecting the folding member to one of the sliding members, said folding member constituting a connecting link between the sliding members and one end of the bracelet, and ratchet and pawl means, inoperative when the folding member is open, and operative when the folding member is folded over in closed position upon the sliding members to prevent lengthwise adjustment of the two sliding members in a direction to extend the same but to permit lengthwise adjustment of the two sliding members in a direction to contract the same while the folding member is in closed position.

"5. An extensible clasp for bracelets comprising two sliding links connected to slide lengthwise one upon the other, a folding link, means connecting the folding link to one of the sliding links, said folding link constituting a connecting link between the sliding links and one end of the bracelet, and a ratchet and pawl, so formed and positioned on the clasp as to be in operative engagement only when the folding link is in closed position with relation to the sliding links, the formation of the ratchet being such as to prevent lengthwise adjustment of the two sliding links in a direction to extend the same but to permit lengthwise adjustment of the two sliding links in a direction to contract the same while the folding link is in closed position, the engagement and disengagement of the ratchet and pawl being governed by the closing and opening of the folding link.

"6. An extensible clasp for bracelets comprising two sliding links so connected to each other as to slide lengthwise one upon the other and to project one beyond the other when in extended position, a folding link and means connecting the folding link to one of the sliding links, said folding link constituting a connecting link between the sliding links and one end of the bracelet, and ratchet and pawl

means so arranged on the clasp as to be in operative engagement only when the folding link is in closed position with relation to the sliding links, said ratchet and pawl means being so formed that when in operative engagement they will hold the sliding links releasably in any one of several positions of lengthwise adjustment between the sliding links and permit a lengthwise adjustment between the sliding links for a relatively small adjustment of the clasp."

In Claim 1, when the folding member is in open position, the means controlling the adjustment of the sliding links, are inoperative, and operative when the folding member is in closed position, and, when the folding member is in closed position, the sliding members may be adjusted in a direction to contract.

Claims 1 and 2 are the same except that Claim 2 recites that the means controlling the adjustment of the sliding links consists of ratchet and pawl means.

Claim 5 adds that the ratchet and pawl are in operative engagement only when the folding link is in closed position and recites that the engagement and disengagement of the ratchet and pawl are governed by the closing and opening of the folding link.

Claim 6 is similar to Claim 5 but broad enough to include a lengthwise adjustment between the sliding links for relatively small adjustments in either direction.

In presenting its suit for infringement the petitioner filed its bill of complaint and attached thereto a specimen of the article manufactured by the respondent. This specimen was marked "Exhibit 4". A duplicate of this was introduced for convenience and was marked "Exhibit 8." The suit was brought to determine whether the specimen marked "Exhibit 4" is an infringement. However, in the course of the trial respondent's Exhibits A and C were placed in evidence. Exhibit A is like petitioner's Exhibits 4 and 8. To destroy the effect of certain insinuations which arose during the trial as to certain exhibits, the petitioner introduced Exhibit 14, identical in construction and operation with petitioner's Exhibits 4 and 8. Exhibit C was introduced as a specimen of the latest form of manufacture by respondent and differs slightly from Exhibit 4. Exhibit B is a sample of the

item which the respondent has discontinued manufacturing. No question of infringement is presented as to that item.

Exhibit A was made during the period the respondent was a licensee. Thus it was licensed and subject to a royalty, but the petitioner urges that it be determined whether specimens like Exhibit A infringe.

There is a difference between Exhibits C and Exhibits 4 and A. In Exhibit C there is an additional spring finger which bears against the flange of the outer slide and tends to press the pawl down into engagement with the ratchet and hold it there at all times, except when the folding link is fully extended to open position. The tension of the spring finger is overcome when the folding link is extended to open position. It then engages an ear or lug on the base of the pawl and lifts the pawl out of engagement with the ratchet. The ratchet and pawl are thus inoperative in its open position.

The petitioner presents for determination the question of infringement as to petitioner's Exhibits 4, 8, and 14, and respondent's Exhibits A and C.

The validity of the patent is admitted. The respondent denies that the article manufactured and sold by-it infringes the claims above recited. To substantiate its contention that the claims in suit must be narrowly construed it cites the prior art and emphasizes certain prior patents.

However, the truth is that the respondent had been a licensee of the petitioner and it seems that from the history of such relationship between the parties, the court is justified in seeking to construe liberally the claims in question. Leader Plow Co. v. Bridgewater Plow Co., 4 Cir., 237 F. 376.

Moreover, the respondent has cited numerous prior patents to demonstrate that the claims in suit have been anticipated and must be so narrowly construed that infringement cannot exist, but has relied chiefly on the Chilson patent, United States Patent No. 1,641,372, the Gottlieb French Patent No. 692,263, and the Heugas French Patent No. 660,632.

In a somewhat similar situation the court in Forsyth v. Garlock, 1 Cir., 142 F. 461, 463, through Circuit Judge Putnam, said:

"Our general observation as to these is that the citation of so many patents by a respondent in an infringement suit sometimes tends, as we have several times said, not so much to weaken the complainant's position as to strengthen it, by showing that the trade had long and persistently been seeking in vain for what the complainant finally accomplished."

The Chilson patent was considered by the Patent Office in the interference proceedings and it was held that it did not affect the claims in suit. It was there held that:

"The patent to Chilson is particularly relied upon, both alone and in combination with other patents, to support the motion to dissolve. It is obvious that while this patent discloses a device which is in many respects similar to the disclosures of each of the five parties to this interference it has one distinct difference from each of said five disclosures. This difference is that in the Chilson device it is impossible to make any final adjustment of the bracelet length after the folding links 18, 19 and 20 thereof are in their closed position, while in each of the five devices here involved this final adjustment is possible. The structure which makes this possible in each of the five application disclosures is a pawl and ratchet mechanism which allows adjustable movement of one sliding member relative to the other while the folding links are in their closed position.

"Counts 1, 2 and 3 are deemed to fully define the structural difference between Chilson and the application disclosures and are not anticipated by said patent."

The Chilson patent shows no ratchet and pawl. It has no ratchet and pawl so organized to form the prescribed functions.

The Gottlieb patent also was considered by the Patent Office when arriving at the decision in the interference case. It was held not to affect the claims.

The Patent Office said:

"This patent fails to meet any of the counts. There is no disclosure therein that a final adjustment of the bracelet length is possible, 'while the folding link is in closed position', and apparently this is impossible in the construction shown. To so modify this structure as to provide this additional function cannot be said to be devoid of invention."

In the Gottlieb patent the pawl is disengaged only by hand and not by opening the folding link. In the Gottlieb construc-

tion it is impossible to adjust the sliding member when the folding members are in closed position. The engagement of the ratchet and pawl is not automatically affected by the closing of the folding links nor is the disengagement affected by extending the folding links to open position. The pawl is under all conditions in engagement with the ratchet except when it is manually disengaged by the finger. That can only be done when the folding links are in open position.

The Heugas patent differs from the patent in suit in its function, and principle of operation, and in its mechanical construction. In the Heugas patent the closing and opening of the folding links has no control over the ratchet and pawl. The ratchet and pawl are operable by a little handle that sticks out of the side. The pawl has to be manually released from the ratchet and not automatically released by unfolding the folding link to open position as in the Domler patent. These patents and the others cited show nothing in the prior art which requires that the claims be limited or narrowed in the interpretation of them. It necessarily follows that the claims are to be considered broadly.

■ In the instant case, it is true that there is a difference between the patented construction and the article manufactured and sold by the respondent. The ratchet is on one of the folding members in the former and on one of the sliding members in the latter. Also the pawl is made integral with the sliding member in the former, and as a separate part in the latter. But the patent itself provides for this difference. The specification recites that: "* * * it will be understood that the invention is susceptible of embodiment in various forms, some of which are illustrated in the accompanying drawing, and that the structural details herein set forth may be varied to suit particular purposes without departing from the spirit of the invention."

It also states, after describing the action of the patent, that "Although the action just described is recommended it will be obvious that the shape and location of the shoulders of the teeth or serrations and of the pawl or projection may be varied without departing from the spirit of the invention."

In the case entitled Paper Bag Patent Case, Continental Paper Bag Co. v. East-ern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 751, 52 L.Ed. 1122, the Court said: "* * * that infringement is not averted merely because the machine alleged to infringe may be differentiated from the patented machine, even though the invention embodied in the latter be not primary; and, second, that the description does not necessarily limit the claims."

Further, it is laid down in United States Ozone Co. et al. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881, at page 889, that "The law is clear that the change of location of an element in a combination, if the function remains the same, will not avoid infringement."

In discussing infringement, the Court, in Union Paper Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained."

■ However, the function and mode of Exhibit 4 are identical with the article manufactured under the patent in suit. When the folding links are closed the ratchet and pawl are held in engagement. When the folding links are in open position the ratchet and pawl are disengaged and inoperative. They are operative in

920

the language of Claim 1. This is true also as to Claim 2, where the "means" are described as "ratchet and pawl means". Claim 5 is somewhat similar to Claim 2. These two claims differ in that Claim 5 recites that the ratchet and pawl are "in operative engagement only when the folding link is in closed position." Claim 6 is similar to Claim 5 but somewhat broader because it covers lengthwise adjustment between the sliding links for a small adjustment in either direction. When the folding links of Exhibit 4 are closed, the ratchet and pawl are in operative position as recited in all the claims in suit. Exhibit A is operative in the language of the claims for the same reasons and this is true of Exhibits 8 and 14.

There is a difference between these exhibits and Exhibit C, however. A spring finger on Exhibit C tends to press the pawl into engagement with the ratchet and hold it there except when the folding link is fully extended to open position. The tension of the spring finger is overcome when the folding link is extended to open position.

The folding link in its open position engages an ear or lug on the base of the pawl. and lifts the pawl out of engagement with the ratchet. The tension of the spring finger is then overcome. In open position the ratchet and pawl are inoperative. This is the condition revealed in the language of Claims 1 and 2 which is "means inoperative when the folding member is in open position."

But in Claims 5 and 6 the ratchet and pawl are in operative engagement only when the folding link is in closed position. The ratchet and pawl in Exhibit C remain in operative engagement while the folding link is in partially open position, and so remains until it is in fully open position. At that time the ratchet and pawl become inoperative. This distinctive characteristic of Exhibit C places it within the terms of Claims 1 and 2 but not within the terms of Claims 5 and 6, which recite that the ratchet and pawl are operatively engaged only when the folding link is in closed position.

Exhibits 4, 8, 14 and A infringe the Claims 1, 2, 5 and 6. Exhibit C infringes Claims 1 and 2. The prayer of the petitioner is granted. A decree may be entered accordingly.