## ST. JOSEPH IRON WORKS v. FARMERS MFG. CO.
### No. 4478.

Circuit Court of Appeals, Fourth Circuit.
Aug. 28, 1939.

Before PARKER and NORTHCOTT, Circuit Judges, and WYCHE, District Judge.

Edwin T. Bean, of Buffalo, N. Y. (Richard W. Treverton, of Buffalo, N. Y., Humphrey S. Gray, of Benton Harbor, Mich., and John W. Oast, Jr., of Norfolk, Va., on the brief), for appellant.

H. H. Rumble, of Norfolk, Va. (Rumble & Rumble, of Norfolk, Va., on the brief), for appellee.

PARKER, Circuit Judge.

This is a suit to recover royalties under a patent licensing contract. Plaintiff, St. Joseph Iron Works, is a manufacturer of basket making machinery. Defendant, Farmers Manufacturing Company, is a manufacturer of baskets used as containers for fruits and vegetables. Under a contract with plaintiff of November 20, 1935, defendant paid royalties amounting to $8,357.-11 during the years 1926 to 1929 to the American Containers Corporation, affiliated with plaintiff, to which plaintiff's rights under the contract had been assigned. Plaintiff, having obtained a re-assignment of the contract to it, seeks to recover royalties for the years 1929 to 1935 amounting to $26,-962.07. Defendant resists the recovery of further royalties and seeks by way of counterclaim to recover from plaintiff those already paid, on the ground that plaintiff has breached the contract by rebuilding in accordance with its patents certain machinery of the Patten Package Corporation of Calypso, N. C., without requiring royalties of that corporation and without notifying defendant in accordance with the requirements of the contract of the terms thus granted, which were more favorable than those granted plaintiff. Other breaches of

the contract are relied on by defendant; but, in the view which we take of the case, they are not here material. There was decree for the defendant in the court below, and plaintiff has appealed.

Plaintiff had been engaged in the manufacture of basket making machinery for many years prior to 1925, but not until that year did it attempt to exact from its customers royalties for the use of the machinery in addition to the purchase price. About that time, however, it became interested in a type of basket known as the "Ideal" hamper basket and had applications for patents pending in the Patent Office covering machinery for making this basket and the basket itself. The basket, which seems hardly patentable, is a round, squat, straight-side basket, the sides of which are made of wooden staves placed around a flat bottom and held in position by hoops, fastened to them by means of wire staples. In the structure of the basket these staves may be spaced apart or may slightly overlap each other.

On November 20, 1925, plaintiff entered into a contract with defendant, reciting that plaintiff was the owner of methods and processes for the manufacture of the basket and that applications for patent were pending for the protection of these methods and processes. Defendant was licensed under this contract to manufacture baskets in accordance with said methods and processes and to use and sell the baskets so manufactured. It was agreed that no other person should be licensed by plaintiff to manufacture the baskets in the state of Virginia, that defendant should pay plaintiff a royalty or license fee of five cents per dozen baskets manufactured by the methods and processes licensed and that defendant should not manufacture the "Ideal" basket except by these methods and processes and, if it did so, should pay royalties just as though they had been manufactured thereunder. The contract expressly provided that the license granted should cover "licenses, methods and processes in any manner acquired by first party (the plaintiff) including those now owned and/or controlled, and those hereafter acquired, which cover or pertain to the manufacture of Ideal Hamper Baskets as now designed or as hereafter changed or improved". It provided, also, that baskets manufactured by defendant should be marked in accordance with agreement between the parties; and at the request of plaintiff defendant included in its marking,

the words "Patent Pending". Defendant was assured most favored customer treatment in the following paragraph, which is the one here specially pertinent, viz.:

"9. If First Party grants to any other party license on one or more of the patents or applications for patent, which are the subject matter of this agreement, upon more favorable terms and/or royalty rates than those specified herein, First Party shall give immediate written notice thereof to Second Party. If Second Party so elects, it shall automatically become entitled to such more favorable terms and/or royalty rates."

In April 1926, the plaintiff equipped a machine of the Patten Package Corporation of Calypso, North Carolina, with appliances for the manufacture of the open stave type of the "Ideal" hamper basket, and exacted of that corporation no royalties on the baskets to be manufactured on the machine but merely a normal charge for the parts furnished and the services rendered. No notice was given defendant of the license thus impliedly granted the Patten Package Corporation to use the machine in the manufacture of "Ideal" hamper baskets without payment of royalties; and defendant did not learn of the fact until after it had paid the royalties which it seeks to recover in its counterclaim.

Plaintiff on May 28, 1926, assigned its rights under its contract with defendant to the American Containers Corporation, which it had caused to be organized and the majority of the stock of which was admittedly owned by its officers and directors. All royalties paid by plaintiff were paid to this corporation; and plaintiff resists recovery under the counterclaim because of this difference in corporate identity. No such point was raised in the reply to the counterclaim, however, and the judge below refused to consider it on that ground. It is not without significance, in this connection, that on November 6, 1929, after controversy over further payment of royalties by defendant had arisen, plaintiff wrote defendant that plaintiff would not at that time insist that it make payments as provided in the contract, thereby impliedly recognizing plaintiff's control over the situation and that the payment of royalties was for plaintiff's benefit.

Since it was manifestly to the advantage of defendant to be free of the obligation to pay royalties on the baskets of its manufacture, we may assume that it would have availed itself of this privilege under paragraph 9 of the contract if it had been notified by plaintiff that a license without royalty had been granted the Patten Package Corporation with respect to matters covered by the license to defendant. The case before us, therefore, is narrowed to this: Was there a license granted to the Patten Package Corporation as to matters covered by defendant's license? The equipping of the machine of that corporation to manufacture the "Ideal" hamper basket unquestionably amounted to an implied license to use the machine as so equipped for the purpose of manufacturing baskets of that character and to use the methods and processes which were the function of the machine. DeForest Radio Tel. Co. v. United States, 273 U.S. 236, 47 S.Ct. 366, 71 L.Ed. 625; Goss v. Henry McCleary Co., 9 Cir. 92 F.2d 444. The question is further narrowed, therefore, to this: Did the implied license granted the Patten Package Corporation embrace any matter within the license granted defendant? We think that this question must be answered in the affirmative.

We may pass, without deciding, the question as to whether the license to defendant embraces the right to make and sell the "Ideal" hamper basket, for which plaintiff had an application for patent pending at the time the license to defendant was granted, and may assume that defendant's license embraces only the methods and processes and the use of machinery for making such baskets, so that only the licensing of these would impose upon plaintiff the duty of giving defendant notice under paragraph 9 of the contract; for we think that the license impliedly granted the Patten Package Corporation embraced methods, processes and the use of machinery clearly covered by the provisions of defendant's license. At the time of the making of the contract with defendant, plaintiff had pending in the Patent Office an application for patent made by its chief engineer, one A. H. Schmidtke, which resulted in the issuance of patent No. 1,-682,769, the rights in which were owned by plaintiff. This patent covered machinery for making the "Ideal" hamper basket; and, while the lap-stave basket was shown as the preferred form, the machinery described was not limited to the construction of that particular type of basket and could easily be adjusted to make the open-stave basket made by the Patten Package Corporation. Claims 1 and 8 of the patent read squarely upon the machine of that corporation as

equipped by plaintiff. Those claims are as follows:

"1. In a machine of the class described, the combination of a rotatable form comprising a plurality of laterally spaced members, a reciprocable feeding device having supports working between the members of the form for positioning a plurality of panels successively around the form, guides for directing bands into the panels over the said members of the form, and fastening devices cooperating with said members to secure the bands and panels together in the form of an annular shell."

"8. In a machine of the class described, the combination of a form made up of spaced elements, means for imparting a step by step rotation to the form, panel feeding means working transversely of the axis of the form and provided with panel supporting members working between the members of the form, and stitching means cooperating with the members of the form."

The machine of the Patten Package Corporation was an old machine made for building the old type of tall hamper basket, having a chain device for feeding staves, with supports or fingers for placing them to be stapled. That corporation built and sent to plaintiff an open stave, squat hamper basket, admittedly an "Ideal" hamper basket, and requested assistance in equipping its machine so as to manufacture baskets of that character. Plaintiff rendered this assistance, furnishing the form members around which the staves were to be stapled to the hoops and the anvil or bottom holder. As thus equipped the old machine had "a rotatable form comprising a plurality of laterally spaced members" of the same character as those shown by the specification of the patent as members 43, 44 and 45. It had "a reciprocable feeding device having supports working between the members of the forms for positioning a plurality of panels successively around the form". It had "guides for directing the bands onto the panels over the said members of the form". And it had "fastening devices cooperating with said members to secure the bands and panels together in the form of an annular shell". It also had "means for imparting a step by step rotation to the form". It thus had all of the elements contained in the two claims, 1 and 8, of the patent, which were combination claims; and these elements worked in combination to produce the "Ideal" hamper basket, which the machine of the patent was designed to produce.

Plaintiff contends that the "supports working between members of the form" called for in the claims of the patent are lacking in the Patten machine, because in that machine the supports or fingers for placing the staves do not work between the members within the periphery of the form. There is nothing in the patent, however, that requires that they work within the periphery and nothing in the nature of the patented machine which so requires. On the contrary, the purpose of these supports or fingers is to put and hold the staves in position for stapling. To do this, it is necessary that they be spaced so as not to interfere with the stapling devices, which work over the annular form members; and they are thus placed laterally between those members although not necessarily within their periphery. The patent shows two supports or fingers for placing staves for a lap-stave basket, but only one of these ever comes within the periphery of the form and then only after its work is done. The other, which is the only one which would be used in making an open-stave basket, never comes within the periphery at all but does its work precisely as the supports or fingers of the Patten machine. The supports on the Patten machine function in the same way as those of the patent to accomplish the same result and are equivalents in any sense of that term. Cf. Frick Company v. Lindsay, 4 Cir. 27 F.2d 59.

It is argued that the fingers or supporting members on the Patten machine were old in the art, the feeding and positioning devices of that machine being the same that they were before it was rebuilt. This is true; but the answer is that until the machine was rebuilt they were not used in a combination like that of the patent. It is further argued that in the light of the prior art, the claims should be strictly construed and limited to the particular devices disclosed by the specification and drawings, which are designed for the manufacture of the lap-stave basket. This rule of construction, which is availed of to save a meritorious patent which would otherwise be held void on account of the breadth of the claims (Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir. 40 F.2d 910, 914) cannot avail plaintiff, for the reason that plaintiff cannot be heard to question the validity of the claims of its patent, and the ordinary rule applies that courts will interpret an expression positively recited in the claims as satisfied by any suitable

instrumentality capable of performing the stated function successfully. International Banding Mach. Co. v. American Bander Co., 2 Cir., 9 F.2d 606, 608.

■ Instead of a strict construction, we think the patent, as between plaintiff and defendants, should be liberally construed to the end that defendant may be protected in the license granted it by plaintiff, for which royalty is reserved by the contract. Frick Co. v. Lindsay, supra; Leader Plow Co. v. Bridgewater Plow Co., 4 Cir., 237 F. 376, 377. A licensor should no more be permitted to limit the rights of his licensee by a strict construction of a patent than an assignor should be permitted to limit those of his assignee; and what was said by this court in the Leader Plow Company case, supra, is pertinent in the situation here presented. The court, speaking through Judge Woods, said:

"The patents set up by the plaintiff being nothing more than improvements on the prior art, the general rule on the subject would require that they be given a narrow construction. Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437. But this general rule is elastic enough to allow the application of the dominant equitable rule that as between the assignor and assignee the construction of the patent must be broad and liberal enough to give full value to the patent assigned, and shut out the assignor from every structure within the fair meaning of the claim. When Thomas assigned the Hanger and Thomas and Hanger patents, he asserted them to be valid, and he is estopped to deny their validity. He was not estopped, however, from showing the limits of the assigned patents by evidence of the prior art, or any other relevant fact. Martin, etc., Co. v. Martin [1 Cir.], 67 F. 786, 14 C.C.A. 642; Automatic S. Co. v. Monitor S. Co., C.C., 180 F. 983; Noonan v. Chester Park Co. [6 Cir.] 99 F. 90, 39 C.C.A. 426; Smith v. Ridgely [6 Cir.], 103 F. 875, 43 C.C.A. 365; Rollman v. Universal H. Works, D.C., 207 F. 97; [Standard] Plunger E. Co. v. Stokes [2 Cir.], 212 F. 941, 129 C.C.A. 461. But on an issue of infringement between assignor and assignee the courts will give a liberal rather than a narrow construction to the patent assigned, if necessary to preserve its value."

Here the plaintiff has given a license to defendant to use its patented machinery and methods in the manufacture of the "Ideal" basket and has exacted of defendant a royalty for the privilege. In order to secure from defendant the payment of this royalty it has placed in its contract a "most favored" customer clause for the protection of defendant. When it grants a license to another person to manufacture the identical basket which the machinery and methods licensed to defendant were to be used to manufacture, and then seeks to avoid the "most favored customer" clause of its contract, surely any patent covered by the license to defendant is entitled to as liberal a construction as the court can reasonably place upon it, in order that the rules of fair dealing may be enforced between the parties and defendant be secured in the enjoyment of the rights which it was the purpose of the contract to grant to him. We do not think, however, that it is necessary to invoke any liberal rule of interpretation to find that the Patten machine falls within claims 1 and 8 of the Schmidtke patent, covered by defendant's license.

And it makes no difference whatever, that the machine used by defendant under his license was a shell machine and not the machine covered by the Schmidtke patent. Defendant had the right under the contract to use the machine of that patent, if it desired, in making the "Ideal" basket and plaintiff had no right to license any other person to use it on a more favorable royalty basis without giving defendant notice as provided in the 9th paragraph of the contract.

■ There is another reason why the equipping of the machine of the Patten Package Corporation to manufacture the "Ideal" basket without giving notice to defendant must be held a breach of the provision contained in paragraph 9 of the contract. At the time of that transaction, plaintiff was pressing in its application for the Schmidtke patent other claims, which were not rejected by the Patent Office until the following year, and which unquestionably covered, not only the reconstructed machine of the Patten Package Corporation, but also the method used by that corporation in the manufacture of the "Ideal" basket. These claims were numbered 11, 18 and 37, and are as follows:

"11. In an apparatus of the class described the combination of two relatively movable members one of which serves as a holder for a bottom and the other of which serves as a form for an annular shell, and stapling mechanism acting against the holder and form to assemble a plurality of pan-

els around the form and to secure the ends of the panels to the bottom on the holder."

"18. In a machine of the class described, the combination of a form, a reciprocating feeding device for arranging a plurality of panels successively around the form, and mechanism cooperating with the form to unite the panels thereon and form an annular shell."

"37. The method of making a basket or like receptacle which comprises mounting a bottom with laterally extending annular flange adjacent a form with said annular flange interposed between a staple driving mechanism and a staple clinching member, then successively applying panels around the form so that the corresponding ends thereof project over the annular flange of the bottom, and successively driving staples through said ends of the panels and the flange and clinching the staples against the aforesaid staple clinching member."

It must be remembered that plaintiff's contract with defendant recited that plaintiff was the owner of inventions covering methods and processes, "for the protection of which, applications for letters patent have been filed and are now pending in the Patent Office", and that it granted to defendant a license to manufacture "in accordance with said methods and processes". Paragraph 9, the "most favored customer" clause, required notice to defendant, if plaintiff should grant license upon more favorable terms "on one or more of the patents *or applications for patent*, which are the subject matter of this agreement" (italics supplied). It makes no difference that claims then being pressed before the Patent Office were later rejected. It was plaintiff's duty, upon licensing any other person to use methods or processes covered by pending applications upon more favorable terms or royalty rates than those accorded defendant, to give immediate written notice to defendant so that defendant might avail itself of these terms. Failure to give such notice was a clear breach of the contract; and the breach was not cured by the subsequent rejection of the claims. In other words, plaintiff, in effect, said to defendant: "For the royalty which you are to pay me you may enjoy any rights which I have with respect to methods and processes in the making of this basket, whether covered by patents or merely by applications for patents; and if I give any other person the right to use them on better terms, I agree to notify you and you shall have the right to the same terms". When plaintiff thereafter licensed another person to use the methods and processes covered by its pending patents to manufacture the very basket which defendant was manufacturing, it was plaintiff's duty under the contract to notify defendant; and, had it done so, defendant, upon its election, would automatically have been entitled to the same terms, i. e. to be relieved from the payment of royalties, whether the claims of the patent were ultimately allowed or not. It was the provision of the license relating to the claims, and not the validity of the claims, which fixed the duty of plaintiff and the right of the defendant.

There can be no question but that a breach of the contract in this vital matter precluded recovery of royalties; for if defendant had been given the opportunity by proper notice to be free of royalties, as was the Patten Package Corporation, it would admittedly have exercised its right in the premises. And we think it equally clear that defendant is entitled to recover of plaintiff on its counterclaim the royalties which it paid in ignorance of its rights and as a result of the failure of plaintiff to give the notice which the contract required. The payment of these royalties was a damage which it sustained as a result of plaintiff's breach of contract; and it may recover them of plaintiff as damages for the breach, notwithstanding they may have been paid to another corporation. We regard it as reasonably clear that the American Containers Company was a mere agency of plaintiff in the collection of royalties; and we agree with the court below that, if point was to be made of the difference in corporate identity, it should have been raised in the pleadings. But, irrespective of these matters, defendant is entitled to recover from plaintiff the amount of royalties paid the American Containers Company as damages flowing from plaintiff's breach of contract.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.